# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| Baker Hughes Incorporated, Baker Hughes Oilfield Operations, Inc., Pegasi Energy Resources Corp., Pegasi Operating, Inc., Weatherford International, LLC, Weatherford/Lamb, Inc., Weatherford US, LP, and Weatherford Artificial Lift Systems, LLC, <br><br> Movants, <br><br> v. <br><br> Bennett Jones LLP, <br><br> Respondent. | Civil Action No. _____ <br><br><br> [PENDING CASE IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, TYLER DIVISION, CASE NO. 6:15-cv-724-RWS-KNM] |

## MOTION TO COMPEL DOCUMENTS AND TESTIMONY FROM BENNETT JONES LLP

Movants Baker Hughes Incorporated, Baker Hughes Oilfield Operations, Inc., Pegasi Energy Resources Corp., and Pegasi Operating, Inc. ("Baker Hughes") and Weatherford International, LLC, Weatherford/Lamb, Inc., Weatherford US, LP, Weatherford Artificial Lift Systems, LLC ("Weatherford"), and Peak Completion Technologies, Inc. (collectively, "Movants"), pursuant to *Federal Rule of Civil Procedure* 37(a), move the Court for Orders requiring third party, Bennett Jones LLP, to comply with Movants' March 14, 2016 subpoena requesting Federal Rule of Civil Procedure 30(b)(6) corporate testimony.

For the reasons stated in Movants' concurrently filed Statement of Points and Authorities, Movants respectfully request that Bennett Jones be compelled to comply with Movants' subpoena promptly.

| | |
|---|---|
| **McKool Smith, P.C.** | **Heim Payne & Chorush, LLP** |

**McKool Smith, P.C.**

*Tiffany Hearl* (signature)

Tiffany Heavlin
District of Columbia Bar No. 1020997
theavlin@mckoolsmith.com
**MCKOOL SMITH, P.C.**
1999 K Street NW, Ste. 600
Washington, DC 20006
Telephone: (202) 370-8300
Facsimile:  (202) 370-5344

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
P.O. Box O
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile:  (903) 923-9099

Steve J. Pollinger
Texas State Bar No. 24011919
spollinger@mckoolsmith.com
Eric C. Green
Texas State Bar No. 24069824
egreen@mckoolsmith.com
Leah B. Buratti
Texas State Bar No. 24064897
lburatti@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile:  (512) 692-8744

William L. LaFuze
Texas State Bar No. 11792500
wlafuze@mckoolsmith.com
**MCKOOL SMITH, P.C.**

**Heim Payne & Chorush, LLP**

*/s/ Christopher M. First*
Leslie V. Payne
Texas State Bar No. 0784736
Email: lpayne@hpcllp.com
Christopher M. First
Texas State Bar No. 24095112
Email: cfirst@hpcllp.com
**Heim Payne & Chorush, LLP**
600 Travis St., Suite 6710
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Douglas R. Wilson
Texas State Bar No. 24037719
Email: dwilson@hpcllp.com
**Heim Payne & Chorush, LLP**
9442 Capital of Texas Hwy.
Plaza I, Suite 500-146
Austin, Texas 78759
Telephone: (512) 343-3622
Facsimile: (512) 345-2924

**ATTORNEYS FOR DEFENDANTS
WEATHERFORD INTERNATIONAL,
LLC, WEATHERFORD/LAMB, INC.,
WEATHERFORD US, LP, AND
WEATHERFORD ARTIFICIAL LIFT
SYSTEMS, LLC**

| | |
|---|---|
| 600 Travis Street, Suite 7000<br>Houston, Texas 77002<br>Telephone: (713) 485-7300<br>Facsimile:  (713) 485-7344<br><br>**ATTORNEYS FOR DEFENDANTS,<br>BAKER HUGHES<br>INCORPORATED, BAKER<br>HUGHES OILFIELD OPERATIONS,<br>INC., PEGASI ENERGY<br>RESOURCES CORP., AND PEGASI<br>OPERATING, INC.** | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on counsel for Bennett Jones via electronic mail and via Federal Express on May 3, 2016.

_/s/ Leah Buratti_
Leah Buratti

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| Baker Hughes Incorporated, Baker Hughes Oilfield Operations, Inc., Pegasi Energy Resources Corp., Pegasi Operating, Inc., Weatherford International, LLC, Weatherford/Lamb, Inc., Weatherford US, LP, and Weatherford Artificial Lift Systems, LLC,<br><br>                              Movants,<br><br>        v.<br><br>Bennett Jones LLP,<br><br>                              Respondent. | Civil Action No. _____<br><br>[PENDING CASE IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, TYLER DIVISION, CASE NO. 6:15-cv-724-RWS-KNM] |

## MOVANTS' STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL TESTIMONY FROM BENNETT JONES LLP

# TABLE OF CONTENTS

I.   Introduction ............................................................................................. 5

II.  Statement of Relevant Facts .................................................................. 6

III. Legal Standard ...................................................................................... 13

IV.  Analysis ................................................................................................. 13

    A.   Defendants Seek Highly Relevant, Discoverable Evidence from Bennett Jones ........................................................................... 13

    B.   Bennett Jones' Objections Lack Any Merit and Should Be Overruled ...... 14

        1.   Requiring Ms. Caldwell to Appear in Washington D.C. Does Not Violate Rule 45(c)'s Territorial Limits Because She Regularly Transacts Business in the Washington D.C. Area. ......... 15

        2.   Bennett Jones Must Designate a Knowledgeable Witness to Provide Testimony on Defendants' Deposition Topics .................. 20

V.   Conclusion ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alcon Labs., Inc. v. Pharmacia Corp.*,
    225 F. Supp. 2d 340 (S.D.N.Y. 2002) ................................................................. 13, 23

*Amicus Communs., L.P. v. Hewlett-Packard Co.*,
    No. 99-0284, 1999 U.S. Dist. LEXIS 20901 (D.D.C. Dec. 3, 1999) ................... 13, 14

*DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) ......................................... 13

*Ed Tobergte Assocs. Co. v. Russell Brands, LLC*,
    259 F.R.D. 550 (D. Kan. 2009) ........................................................................... 13

*Estate of Klieman v. Palestinian Auth.*,
    293 F.R.D. 235 (D.D.C. 2013) ............................................................................. 22

*Godfrey v. Iverson*,
    No. 05-2044, 2007 U.S. Dist. LEXIS 43269 (D.D.C. June 15, 2007) ....................... 16

*Halliburton Energy Servs. v. M-I, LLC*,
    No. H-06-mc-00053, 2006 U.S. Dist. LEXIS 66374
    (S.D. Tex. Sep. 15, 2006) .................................................................................... 16, 17

*In re Denture Cream Prods. Liab. Litig.*,
    292 F.R.D. 120 (D.D.C. 2013) ............................................................................. 20

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002) ................................................................................ 17

*In re Method of Processing Ethanol Byproducts & Related Subsystems*,
    No. 1:10-ml-02181-LJM-DML, 2014 U.S. Dist. LEXIS 88512
    (S.D. Ind. June 30, 2014) .................................................................................... 9

*In re Vitamins Antitrust Litig.*,
    216 F.R.D. 168 (D.D.C. 2003) ............................................................................. 20

*Kangaroos U.S.A., Inc. v. Caldor, Inc.*,
    778 F.2d 1571 (Fed. Cir. 1985) ........................................................................... 8

*NML Capital Ltd. v. Republic of Arg.*,
  No. 2:14-cv-492-RFB-VCF, 2014 U.S. Dist. LEXIS 110625
  (D. Nev. Aug. 11, 2014) ..................................................................................... passim

*Regents of the Univ. of Cal. v. Kohne*,
  166 F.R.D. 463 (S.D. Cal. 1996) ............................................................................. 17

*Rimsat, Ltd. v. Hilliard*,
  207 B.R. 964 (D.D.C. 1997) ............................................................................. 15, 16

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for
  S. Dist.*, 482 U.S. 522 (1987) .................................................................................. 12

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) ................................................................................. 9

*Touchcom, Inc. v. Bereskin & Parr*,
  574 F.3d 1403 (Fed. Cir. 2009) ......................................................................... 18, 19

*Work v. Bier*,
  106 F.R.D. 45 (D.D.C. 1985) .................................................................................. 20

*Wultz v. Bank of China Ltd.*,
  298 F.R.D. 91 (S.D.N.Y. 2014) ..................................................................... 6, 20, 21

*Yousuf v. Samantar*,
  451 F.3d 248 (D.C. Cir. 2006) ................................................................................. 17

**OTHER AUTHORITIES**

37 C.F.R. § 11.18(b) ...................................................................................................... 9

6 James Wm. Moore, et al., *Moore's Federal Practice* § 28.12[1] ............................... 12

Fed. R. Civ. P. 1 .......................................................................................................... 18

Fed. R. Civ. P. 30 ........................................................................................................ 13

Fed. R. Civ. P. 37 ........................................................................................................ 13

Fed. R. Civ. P. 45 ................................................................................................. passim

M.P.E.P. § 804 .............................................................................................................. 8

Sedona Conference, *Enforcing Letters Rogatory Issued By an American
  Court in Canada* (June 2011), Ex. 14 at 5-6 ............................................................ 12

## I.     INTRODUCTION

Movants request that the Court order Bennett Jones LLP ("Bennett Jones") to comply with the valid third party subpoena served on Bennett Jones on March 14, 2016. Ex. 1. The subpoena requests Federal Rule of Civil Procedure 30(b)(6) corporate testimony regarding the prosecution of six United States patents by one of Bennett Jones' licensed United States patent agents. The subpoenaed testimony is important to proving an inequitable conduct defense to alleged patent infringement in the underlying litigation.

Bennett Jones has refused to produce a knowledgeable witness to testify as to the 30(b)(6) topics based on its assertion that the subpoena violates Rule 45(c)'s territorial limits because Bennett Jones' knowledgeable employee is allegedly located in Bennett Jones' Calgary office, more than 100 miles from Washington D.C. Bennett Jones' objection is baseless and should be rejected. The 100-mile limit in Rule 45(c) does not release Bennett Jones from its obligation to present a prepared witness in response to proper 30(b)(6) topics. *See, e.g., NML Capital Ltd. v. Republic of Arg.*, No. 2:14-cv-492-RFB-VCF, 2014 U.S. Dist. LEXIS 110625, at \*31 (D. Nev. Aug. 11, 2014); *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 99 (S.D.N.Y. 2014). As an international law firm with a substantial patent prosecution practice before the United States Patent and Trademark Office ("USPTO") and an office in Washington D.C., Bennett Jones cannot claim it is immune from U.S. discovery concerning its prosecution of U.S. patents merely because one of its U.S. patent agents typically resides in Calgary, Alberta, Canada. The Court should compel Bennett Jones to designate a knowledgeable and prepared witness for deposition in Washington D.C.

## II.    STATEMENT OF RELEVANT FACTS

On July 31, 2015, Rapid Completions LLC ("Rapid Completions") asserted U.S. Patent Nos. 6,907,936; 7,134,505; 7,543,634; 7,861,774; 8,657,009; and 9,074,451 (collectively, "Patents-in-Suit") against Defendants Baker Hughes Incorporated, Baker Hughes Oilfield Operations, Inc., Pegasi Energy Resources Corp., and Pegasi Operating, Inc. ("Baker Hughes"), Weatherford International, LLC, Weatherford/Lamb, Inc., Weatherford US, LP, and Weatherford Artificial Lift Systems, LLC ("Weatherford"), and Peak Completion Technologies, Inc. (collectively, "Defendants") in the U.S. District Court for the Eastern District of Texas (the "underlying litigation"). Rapid Completions is a subsidiary of Acacia Research Corporation and did not prosecute the Patents-in-Suit; it acquired the rights to assert the Patents-in-Suit from Packers Plus Energy Services LLC ("Packers Plus"). *See* Ex. 2.

A key defense in the underlying litigation is the unenforceability of the Patents-in-Suit due to inequitable conduct committed by Packers Plus. For example, several of the Patents-in-Suit broadly concern interconnected packer[1] and ball actuated siding sleeve systems for fracturing wellbores to promote extraction of oil and gas. Among other inequitable conduct allegations, Defendants contend that Packers Plus' CEO and named inventor on each of the Patents-in-Suit, Dan Themig, knew that the packers claimed in the Patents-in-Suit were not novel at the time of filing. During prosecution of the Patents-in-Suit, Themig argued a "solid body packer" with "multiple packing elements" was a

---

[1] A packer is a device that can be run into an oil well (or "wellbore") with a smaller initial outside diameter that then expands to seal the well.

patentable distinction over prior art cited by the examiner. *See, e.g.*, Ex. 3 at ¶ 135. However, when trying to bar Packers Plus' competitor, Halliburton, from obtaining a patent on a dual-element packer, Themig took an entirely different position. *See id.* at ¶¶ 136-44. There, Themig stated in a declaration submitted to the USPTO that the packers claimed in the Patents-in-Suit were "well known in the prior art" and not patentable as of the priority date of the Patents-in-Suit.[2] *See id.*

In addition to Themig, Baker Hughes also pled that Ms. Roseann Caldwell, one of Bennett Jones' licensed United States patent agents and the lead prosecutor on each of the Patents-in-Suit, also committed inequitable conduct before the USPTO. *See* Ex. 4 ("As a registered Canadian and United States patent agent, Roseann Caldwell is qualified to practice before the Canadian and the United States Patent Offices . . ."). For example, during prosecution of one of the Patents-in-Suit, the examiner issued an obviousness-type double patenting rejection of several claims based on one of Baker Hughes' patents. Ex. 3 at ¶ 211. Any patent prosecutor would know that Baker Hughes' patent cannot serve as the basis of a double patenting rejection for Packers Plus' patent. *See* M.P.E.P. § 804. Rather than correct the examiner's apparent confusion, however, Ms. Caldwell simply canceled the improperly rejected claims without informing the examiner he had made a mistake. *Id.* at ¶ 212. Later, Packers Plus and Ms. Caldwell filed a continuation application and sought protection of the *exact* same claims the examiner had previously

---

[2] Baker Hughes has pled other misrepresentations and omissions, as well. *See, e.g.*, *id.* at ¶¶ 130–224 (providing a complete synopsis of Baker Hughes' inequitable conduct allegations).

rejected as being obvious over Baker Hughes' patent. *Id.* at ¶ 213. Still, Ms. Caldwell neglected to inform the examiner that he had previously rejected these claims and had apparently confused Packers Plus for Baker Hughes. *Id.* During prosecution of the Patents-in-Suit, Ms. Caldwell had a duty to inform the examiner of his apparent mistake, but she never did so. *See Kangaroos U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1576 (Fed. Cir. 1985) ("There is no reprieve from the duty of square dealing and full disclosure that rests on the patent practitioner in dealings with the PTO. We agree with the district court that this duty is not done by one who knowingly takes advantage of an error by the PTO.").

Although Defendants have uncovered compelling evidence of Packers Plus' and Ms. Caldwell's inequitable conduct before the USPTO, it is well established that Defendants' burden of proof on inequitable conduct is demanding.[3] Thus, Defendants seek documents and deposition testimony from Packers Plus' prosecution counsel, Bennett Jones.

Bennett Jones—through its agent, Ms. Caldwell—was central to the prosecution of each of the Patents-in-Suit. Over the course of 14 years, Ms. Caldwell served as Packers Plus' primary prosecuting agent for each of the Patents-in-Suit. Her signature appears on the face of the first priority application for the Patents-in-Suit, filed on November 15,

---

[3] *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) ("To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO."); *see also In re Method of Processing Ethanol Byproducts & Related Subsystems*, No. 1:10-ml-02181-LJM-DML, 2014 U.S. Dist. LEXIS 88512, at *31 (S.D. Ind. June 30, 2014) ("*Therasense* makes an inequitable conduct claim extraordinarily difficult to prove.").

2001, and on nearly every intervening submission to the USPTO through issuance of the most recent of the Patents-in-Suit on July 7, 2015. *See, e.g.*, Exs. 5-6. She submitted numerous prior art disclosures, arguments in response to office actions, terminal disclaimers, and miscellaneous correspondence with the USPTO. *See, e.g.*, Exs. 7-8. Ms. Caldwell certified each submission to be truthful and based on "the best of [her] knowledge, information and belief, formed after an inquiry reasonable under the circumstances." 37 C.F.R. § 11.18(b). Ms. Caldwell also appeared personally in the Washington D.C. area for an interview with the USPTO examiner while prosecuting one of the Patents-in-Suit. Ex. 9. During the in-person interview, it appears Ms. Caldwell and the examiner discussed whether prior art packers included "multiple packing elements." *Id.* Thus, the subject matter of that discussion appears to be highly relevant to one of Defendants' inequitable conduct allegations. *See* Ex. 3 at ¶ 164. Because of Bennett Jones' central role—through Ms. Caldwell—in prosecuting the Patents-in-Suit, discovery of documents and testimony from Bennett Jones is important for Defendants to prove inequitable conduct, and especially that Packers Plus acted with the requisite intent.

To obtain this discovery, on March 14, 2016, Defendants served a Rule 45 subpoena on Bennett Jones' Washington D.C. office ("Bennett Jones Washington D.C."). The subpoena seeks documents and 30(b)(6) deposition testimony relating to the prosecution of the Patents-in-Suit. *Id.* Counsel for Bennett Jones first contacted Defendants on March 17, 2016 and then provided written objections to Defendants on March 23, 2016. *See* Ex. 10. Bennett Jones and Defendants conferred by telephone on March 25, 2016 regarding Bennett Jones' objections. *See* Ex. 11. Although not included

in Bennett Jones' written objections, counsel for Bennett Jones explained on the call that Bennett Jones also objects to Defendants' subpoena based on its assertions that responsive documents and a witness with knowledge as to the 30(b)(6) topics would likely be located at Bennett Jones' Calgary office ("Bennett Jones Calgary"), its Washington D.C. and Canadian offices are separate entities, and therefore, responsive documents and a witness with knowledge are likely "not available" to Bennett Jones Washington D.C. *Id.* Specifically, with respect to the 30(b)(6) deposition, Bennett Jones stated that it unequivocally refuses to present Ms. Caldwell to testify in response to Defendants' 30(b)(6) topics, but that it would consider presenting a witness to provide limited testimony regarding the 30(b)(6) topics, the different Bennett Jones entities, their relationship, and the existence of (or lack of) responsive documents within the custody and control of Bennett Jones Washington D.C. on May 12th or 13th. *See id.* With respect to the request for documents, Bennett Jones further represented that it would provide additional information concerning Bennett Jones' separate entities, that it would produce any responsive non-privileged documents within the custody or control of Bennett Jones Washington D.C., and that it would determine whether Bennett Jones would agree to produce any documents within the custody or control of Bennett Jones Calgary. *Id.* Ultimately, however, counsel for Bennett Jones declined to state which objections Bennett Jones would be relying on or what it would agree to produce—counsel instead claimed that he required further time to investigate the Bennett Jones entities and the location of relevant documents. *Id.*

Since the March 25, 2016 meet and confer, Bennett Jones has not supplied Defendants with any documents or information supporting its claims that Bennett Jones Washington D.C. cannot comply with Defendants' subpoena because it is a separate entity from Bennett Jones' Calgary office. On April 6th and April 21st, Defendants sent correspondence requesting that Bennett Jones follow up on these issues as promised. *Id.* Bennett Jones provided repeated assurances that it was in the process of working on conducting its "due diligence," it would be providing a response soon, and that it would be producing any non-privileged documents in the possession, custody or control of Bennett Jones D.C. *Id.* This delay continued for a full month, and then counsel for Bennett Jones—still without providing any of the promised follow-up information to support its objections—informed Defendants that it would be filing a motion to quash the subpoena's request for a 30(b)(6) deposition. Ex. 12.

On April 29, 2016, Bennett Jones emailed Defendants explaining that its motion to quash the deposition will be based on Rule 45(c) and attorney-client privilege. *Id.* Bennett Jones stated it "intend[s] to produce all responsive non-privileged documents subject to our objections." *Id.* Counsel for the parties met and conferred later that day regarding Bennett Jones' amended position. *Id.* During the meet and confer, counsel for Bennett Jones clarified it would produce one of its Washington D.C. employees, Melanie Aitken, for deposition, but that she would not be prepared to provide corporate testimony concerning Defendants' 30(b)(6) topics. *Id.* Bennett Jones' counsel further asserted that it would not allow Ms. Aitken to respond to substantive questions concerning Bennett Jones' patent prosecution on the grounds of attorney-client privilege, and that Ms. Aitken

would only be permitted to provide document authentication testimony. *Id.* Thus, it currently appears that Bennett Jones is willing to respond to Defendants' document requests[4] but not to provide testimony on Defendants' deposition topics.

In the meantime, out of an abundance of caution, Defendants also filed an unopposed motion for letters rogatory in the Eastern District of Texas, which the court granted on April 4, 2016. *See* Ex. 13. Defendants are now in the process of filing the letters rogatory in Canada. However, it is unclear whether the Canadian courts will permit the discovery sought regarding inequitable conduct, and, if permitted, the scope of that discovery is likely to be limited in comparison to what would typically be available in the United States.[5] Indeed, during Defendants' meet and confer with Bennett Jones on April 29, 2016, Bennett Jones' counsel stated that Bennett Jones would "absolutely" oppose Defendants' letters rogatory in Canada. Ex. 12. Furthermore, obtaining evidence through letters rogatory can be a cumbersome and time consuming process,[6] which is problematic because Defendants' deadline to amend their inequitable conduct pleadings without leave of court is June 9, 2016.

---

[4] As of the filing of this motion, Defendants have not received a privilege log or any documents from Bennett Jones. Thus, it remains to be seen if Bennett Jones will actually comply with Defendants' document requests.

[5] *See* The Sedona Conference, *Enforcing Letters Rogatory Issued By an American Court in Canada* (June 2011), Ex. 14 at 5-6 (observing, "[i]n Canada, the scope of discovery is narrower" and "[t]here is no mandatory requirement that Canadian courts honour letters rogatory issued by a foreign court"); *see also Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 542 (1987) ("It is well known that the scope of American discovery is often significantly broader than is permitted in other jurisdictions.").

[6] *See* 6 James Wm. Moore, et al., *Moore's Federal Practice* § 28.12[1] (observing "discovery through [letters rogatory] can be a very lengthy process" and "[e]xecution of letters may take from six months to one year, or even longer").

## III.    LEGAL STANDARD

Rule 37 of the Federal Rules of Civil Procedure provides that "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). A nonparty's attendance at a deposition, through a knowledgeable witness, "may be compelled by a subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1), (b)(6). The party objecting to discovery bears the burden of showing why discovery should not be permitted. *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008).

Rule 45 addresses nonparty discovery and permits nonparty depositions to take place "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). However, "Rule 45(c)'s territorial limits place no barriers on the information that a properly served subpoena can reach." *NML Capital Ltd.*, 2014 U.S. Dist. LEXIS 110625, at *31.

## IV.    ANALYSIS

### A.    Defendants Seek Highly Relevant, Discoverable Evidence from Bennett Jones

Defendants' subpoena to Bennett Jones seeks highly relevant and discoverable evidence regarding the patent prosecution services that Bennett Jones provided for each of the Patents-in-Suit, including Ms. Caldwell's material omissions and misrepresentations to the USPTO. Because deposing patent prosecution counsel is often crucial to proving inequitable conduct, "several courts have allowed the depositions of patent prosecution counsel." *Amicus Communs., L.P. v. Hewlett-Packard Co.*, No. 99-0284, 1999 U.S. Dist. LEXIS 20901, at *5 (D.D.C. Dec. 3, 1999); *see also Alcon Labs.,*

*Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 344 (S.D.N.Y. 2002) ("[T]he prosecuting attorney's mental impressions are crucial to any claim of inequitable conduct in a patent infringement action."); *Ed Tobergte Assocs. Co. v. Russell Brands, LLC*, 259 F.R.D. 550, 559 (D. Kan. 2009) (finding prosecution counsel's testimony "crucial" because of its "direct and instrumental role in prosecution of the patent before the USPTO.").

As discussed above, inventor Themig self-servingly flipped on whether "multiple packing elements" was a novel invention depending on whether Themig was discussing his patent or a competitor's patent. Furthermore, Ms. Caldwell neglected to inform the examiner of a material mistake in contradiction to her duty of candor. Thus, Defendants have uncovered compelling evidence that Packers Plus, inventor Themig, and Ms. Caldwell committed inequitable conduct regarding the Patents-in-Suit, but it is important that Defendants continue to uncover further evidence to meet the substantial burden of proving inequitable conduct. Accordingly, Defendants' subpoena specifically seeks testimony relating to Bennett Jones' prosecution of the Patents-in-Suit, its knowledge regarding the prior art and Packers Plus' products at the time of prosecution, and an explanation of Bennett Jones' statements made to the USPTO relating to the Patents-in-Suit. Because Bennett Jones—through its agent, Ms. Caldwell—acted as prosecution counsel on each of the Patents-in-Suit, the testimony requested by Defendants' subpoena is relevant to Defendants' inequitable conduct defenses in the underlying litigation and is discoverable through a Rule 45 subpoena.

**B.     Bennett Jones' Objections Lack Any Merit and Should Be Overruled**

Bennett Jones contends it will not produce a knowledgeable deponent because Bennett Jones does not employ any individual with knowledge regarding the 30(b)(6) topics who lives within the 100 miles of Washington, D.C., and Ms. Caldwell apparently resides outside the 100-mile territorial boundaries of Rule 45(c).[7] Bennett Jones' objection is unfounded. First, Bennett Jones employs at least one knowledgeable witness within the territorial limits of Rule 45(c) because Ms. Caldwell regularly conducts business in the Washington D.C. area. Thus, Bennett Jones can designate a knowledgeable representative within the territorial limits of Rule 45(c) without educating a Washington D.C. residing employee. Second, Bennett Jones must educate and designate someone in compliance with Rule 30(b)(6) because Bennett Jones Washington D.C. is within the territorial boundaries of Rule 45(c).

1.    **Requiring Ms. Caldwell to Appear in Washington D.C. Does Not Violate Rule 45(c)'s Territorial Limits Because She Regularly Transacts Business in the Washington D.C. Area.**

Bennett Jones will undoubtedly argue that it is an undue (or impossible) burden for it to educate a Washington D.C. employee for deposition on the Patents-in-Suit. However, Bennett Jones can avoid this burden by designating Ms. Caldwell. Although Defendants cannot demand that Bennett Jones designate Ms. Caldwell to be its 30(b)(6) representative, Ms. Caldwell is a *potential* designee within this Court's subpoena

---

[7] Bennett Jones also indicated it would refuse to produce a witness on privilege grounds. To the extent Bennett Jones actually plans on asserting a blanket privilege claim over deposition testimony regarding patent prosecution, it is misguided. *See Amicus Communs., L.P.*, 1999 U.S. Dist. LEXIS 20901, at *5 (observing that "several courts have allowed the depositions of patent prosecution counsel, and have refused to uphold such counsel's blanket invocation of attorney-client privilege.").

jurisdiction because she "regularly transacts business in person" in the Washington D.C. area.[8] Fed. R. Civ. P. 45(c)(1)(A). For example, Ms. Caldwell participated in an interview with an examiner at the USPTO in person on October 23, 2008 regarding one of the Patents-in-Suit. Ex. 9.

In applying the territorial limits of Rule 45(c), "[a] trial court has broad discretion in determining whether to quash or modify a subpoena" and the party opposing a subpoena must "prove that a subpoena is unreasonable or oppressive." *See Rimsat, Ltd. v. Hilliard*, 207 B.R. 964, 969-70 (D.D.C. 1997). This Court has held that a witness who maintains a business office in Washington D.C. regularly transacts business in person in Washington D.C. *Id.* at 967, 969-70. By contrast, "limited activity is not sufficient for purposes of Rule 45." *See Godfrey v. Iverson*, No. 05-2044, 2007 U.S. Dist. LEXIS 43269, at *4-5 (D.D.C. June 15, 2007) (holding a subpoenaed individual's "participation as a defendant in a civil action" does not constitute regularly transacting business in person in Washington D.C.).

Other districts have held that regularly transacts business in person "means just what is says." *See, e.g., Halliburton Energy Servs. v. M-I, LLC*, No. H-06-mc-00053, 2006 U.S. Dist. LEXIS 66374, at *4-5 (S.D. Tex. Sep. 15, 2006). For example, in *Halliburton*, the court ordered a German witness to appear for deposition in Houston in a patent case where the witness conducted "regular, frequent, and extended trips to

---

[8] The USPTO is located just nine miles from McKool Smith's Washington D.C. office, which is the noticed location for the deposition. Furthermore, Bennett Jones' Washington D.C. office is located merely half a mile from McKool Smith's Washington D.C. office. The location for the deposition, the USPTO, and Bennett Jones' Washington D.C. office are all located within "the Washington D.C. area."

Houston." *Id.* at *4. Although the subpoenaing party could have obtained the testimony through foreign discovery mechanisms, the court noted the party was "[s]eeking a more efficient method given discovery deadlines in the pending lawsuit." *Id.* at *2. Additionally, like the judge in *Rimsat*, the judge in *Halliburton* observed that the crux of applying Rule 45(c)'s territorial limits is determining whether compliance with a subpoena "would be unreasonable and oppressive." *Id.* at *6.

It would not be unreasonable or unduly burdensome for Bennett Jones to produce Ms. Caldwell for a deposition in Washington D.C. because, like the German witness in *Halliburton*, Ms. Caldwell regularly conducts her patent prosecution business in the Washington D.C area. Ms. Caldwell is licensed as and advertises herself as a United States patent agent. *See* Ex. 4. She has a substantial practice before the USPTO as evidenced by the USPTO listing her as the prosecuting agent on 239 patent applications since 2001. *See* Ex. 15. Each application provides an opportunity for in person interaction with the USPTO, such as examiner interviews. In fact, Ms. Caldwell appeared in person for at least one examiner interview while prosecuting an application that ultimately matured into one of the Patents-in-Suit. *See* Ex. 9. Ms. Caldwell also advertises that she is a member of American Intellectual Property Law Association. *See* Ex. 4. Finally, upon information and belief, Ms. Caldwell conducts ancillary tasks to patent prosecution in the Washington D.C. area, such as meeting with clients and attending conferences. Given Ms. Caldwell's substantial practice before the USPTO and Bennett Jones' office in Washington D.C., it would not impose an undue burden upon her to travel to Washington

D.C. as Bennett Jones' designee.[9] Thus, Bennett Jones employs at least one knowledgeable witness within Rule 45(c)'s territorial limits.

Even if Bennett Jones demonstrates that Ms. Caldwell physically travels to the Washington D.C. area less than twice per year, she is still subject to this Court's subpoena jurisdiction because she frequently avails herself of her license to prosecute patents before the USPTO, and she appeared personally in the Washington D.C. area concerning prosecution of the Patents-in-Suit. The purpose of Rule 45(c) highlights why Ms. Caldwell is within this Court's subpoena jurisdiction. Rule 45(c) is intended to balance the "liberal opportunity for discovery" provided by the Federal Rules against the burden imposed on a third party witness by physically appearing for deposition. *See Yousuf v. Samantar*, 451 F.3d 248, 254 (D.C. Cir. 2006) (broadly construing Rule 45(c)); *Regents of the Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 464 (S.D. Cal. 1996) (observing that the "only concern of Rule 45(c)" is to ease "the burden to the witness of being required to physically appear"); *see also In re Edelman*, 295 F.3d 171, 187 (2d Cir. 2002) ("The purpose of the 100-mile exception is to protect such witnesses from being subjected to excessive discovery burdens in litigation in which they have little or no interest."). Ms. Caldwell's appearance in the Washington D.C. area does not impose an undue burden on her or Bennett Jones because she is a patent prosecutor who is licensed

---

[9] Defendants are willing to make the same burden reducing proposals as those in *Halliburton. See Halliburton Energy Servs.*, 2006 U.S. Dist. LEXIS 66374, at *5 ("M-I has agreed to either pay for Mueller to travel to Houston for his deposition; to have its lawyers travel to Germany to take his deposition there; or to combine his deposition in Houston with a regularly scheduled business trip here, if that is consistent with the discovery deadlines.").

to prosecute patents at the USPTO, has prosecuted 239 patent applications at the USPTO, and appears in person as a patent prosecutor at the USPTO.

It would be an absurd result for Bennett Jones (and Packers Plus) to benefit from Ms. Caldwell's license to practice patent law in the United States by prosecuting the Patents-in-Suit, but to then shield itself from comprehensive American discovery concerning inequitable conduct. *See NML Capital LTD.*, 2014 U.S. Dist. LEXIS 110625, at *31 (noting Rule 45(c) is applied "neither blindly nor mechanically, but through the court's careful exercise of its broad discretion."). Although Defendants contend that Ms. Caldwell is inside of Rule 45(c)'s territorial limits as recited, the Court has discretion to command a non-party to travel more than 100 miles at least where the testimony is "necessary in the interests of justice" and there is "a substantial nexus" among the subpoenaed nonparty, resident corporation, and subject matter of the subpoena. *See id.* at *37 ("This exception to the 100-mile rule is rooted in Rule 1 . . . and the fact that Rule 45(c)'s 'place of compliance' was crafted to reflect 'today's conditions.'") (quoting Fed. R. Civ. P. 45, Advisory Comm. Notes (1985)).

Applying the same reasoning in the related context of personal jurisdiction, the Federal Circuit has noted that a Canadian patent agent is subject to U.S. jurisdiction because "[i]t stands to reason that one who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the law of the United States." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009). The Federal Circuit observed that requiring a licensed U.S. patent agent residing in Canada to travel to Washington D.C. imposes a minimal burden because flights from Canada "to the

Washington D.C. area are routine and frequent." *Id.* at 1417. Thus, a Canadian resident who becomes a "registered patent agent[], submit[s] documents to the USPTO, and perfect[s] their client's patent application before that agency" is subject to U.S. jurisdiction, even if that individual "never physically entered the country." *Id.* at 1416– 18. Although *Touchcom* concerned a different standard than Rule 45(c), *Touchcom* is still instructive because, under Rule 45(c), Ms. Caldwell should not be permitted to "purposefully avail [herself] of the law's benefits . . . and then excuse [herself] from the court's subpoena power." 2014 U.S. Dist. LEXIS 110625, at *33–34. As in *Touchcom*, Ms. Caldwell availed herself of a license to prosecute patents in the United States, which subjects her to discovery obligations in this country. Further, as in *Touchcom*, travelling from Canada to the United States imposes a miniscule burden on Ms. Caldwell. Because Ms. Caldwell regularly avails herself of her license to practice patent law before the USPTO and appeared personally in the Washington D.C. area to advocate for issuance of one of the Patents-in-Suit, Ms. Caldwell is subject to this Court's subpoena jurisdiction, at least to provide testimony concerning patents Ms. Caldwell prosecuted.

Thus, Bennett Jones should be compelled to produce a knowledgeable 30(b)(6) witness—including potentially Ms. Caldwell—to provide testimony on Defendants' deposition topics.

### 2. Bennett Jones Must Designate a Knowledgeable Witness to Provide Testimony on Defendants' Deposition Topics

Defendants recognize that it may be impossible to sufficiently educate and prepare a witness other than Ms. Caldwell on the deposition topics. That said, if Bennett Jones

refuses to produce Ms. Caldwell, it must thoroughly educate and produce *someone*.[10] As is the case for all 30(b)(6) corporate deponents, Bennett Jones has an obligation to prepare one or more designees to provide testimony regarding Bennett Jones' institutional knowledge. *See, e.g.*, *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172 (D.D.C. 2003) ("Bioproducts is obligated to produce one or more 30(b)(6) witnesses who were thoroughly educated about the noticed deposition topics with respect to any and all facts known to Bioproducts or its counsel, regardless of whether such facts are memorialized in work product protected documents or reside in the minds of counsel."). Bennett Jones cannot avoid this obligation by forcing Defendants to use Canadian discovery procedures. *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 126 (D.D.C. 2013) ("There is no requirement that any particular type of discovery be sought before another."); *see also Work v. Bier*, 106 F.R.D. 45, 47, 54 (D.D.C. 1985) (observing foreign discovery in complex patent litigation is often disfavored because it is likely "highly ineffectual in obtaining the evidence essential to a fair adjudication of the issues"). Even if Ms. Caldwell constitutes Bennett Jones' only knowledgeable employee regarding Defendants' deposition topics, her knowledge is imputed to Bennett Jones, and it must either present Ms. Caldwell or fully educate someone else for deposition. *See Wultz*, 298 F.R.D. at 99.

---

[10] Bennett Jones has indicated it is willing to put a Washington D.C. employee up for deposition, Ms. Aitken, but that she would not be prepared to provide substantive testimony regarding Defendants' subpoena. Ex. 12. This does not satisfy Bennett Jones' burden; it must either produce a knowledgeable witness or educate a witness regarding the Bennett Jones' institutional knowledge.

A Southern District of New York court recently addressed a similar dispute. In *Wultz v. Bank of China*, the defendant subpoenaed the New York office of an Israeli bank for 30(b)(6) deposition testimony. *Id.* at 94. The Israeli bank filed a motion to quash and argued that all knowledgeable employees resided more than 100 miles away from its New York office. *Id.* at 95. The bank further argued that "it is not reasonable or even practical to 'educate' a New York Employee concerning transactions and policies in which they have no knowledge." *Id.* The court disagreed and compelled the Israeli bank "to select a designee and educate her in accordance with its duty under Rule 30(b)(6)." *Id.* at 99. Although the court could not compel "a specific person" to appear, the court could compel the Israeli bank to comply with its 30(b)(6) obligations. *Id.* The court observed that "compliance with the 30(b)(6) subpoena is not an undue burden when weighed against [the Defendant's] need for the testimony," and in the era of modern technology, it is reasonable for international offices to educate one another. *Id.*

Similarly, in *NML Capital Ltd.*, several subpoenaed corporations argued that "none of the corporations employ personnel within Rule 45(c)'s territorial limits." 2014 U.S. Dist. LEXIS 110625, at *33. A Panamanian lawyer possessed at least some information and documents responsive to the subpoena, but the corporations refused to produce the Panamanian lawyer because he was outside the territorial limits of 45(c). *Id.* at *6-8. The court compelled the corporations to present the Panamanian lawyer, or another knowledgeable 30(b)(6) witness, for a deposition in Nevada because the corporate entities resided within the territorial limits of Rule 45(c). *Id.* at *31. In particular, the court noted that Rule 45(c) is applied "neither blindly nor mechanically"

and that "[a] company cannot purposefully avail itself of the law's benefits by incorporating in this jurisdiction and then excuse itself from the court's subpoena power by abusing the corporate form." *Id.* at *33-34. "By incorporating in the State of Nevada, the corporations assented to this court's power to impose a burden under Rule 45(c): the limited but real burden that the United States District Court for the District of Nevada may impose on Nevada residents to testify." *Id.* at *34. Thus, although the corporations employed no personnel within the territorial limits of Rule 45(c), the court compelled the corporations to designate a 30(b)(6) deponent to appear. *Id.*

As in *Wultz* and *NML Capital*, here Bennett Jones cannot rely on the distance between its Washington D.C. and Calgary offices to avoid its legitimate discovery obligations under Rule 45. Bennett Jones opened an office in Washington D.C. for its own business purposes and cannot avail itself of the benefits of a Washington D.C. office while also eschewing discovery concerning its domestic patent prosecution business before the USPTO. Bennett Jones advertises itself as conducting a significant patent and trademark prosecution practice before the USPTO, *see* Ex. 16, is named as the prosecuting counsel on 587 United States patent applications, *see* Ex. 17, employs several licensed United States patent agents, *see* Ex. 18, and holds a deposit account with the USPTO, *see* Ex. 6. Because Bennett Jones' connection to the Washington D.C. area is considerable, it should be compelled to comply with its legitimate discovery obligations.

Bennett Jones counsel indicated it would rely on *Estate of Klieman v. Palestinian Auth.* in opposition to Defendants' subpoena. 293 F.R.D. 235 (D.D.C. 2013). In that case, the subpoenaing party sought testimony from a Washington D.C. office of the BBC

relating to the authenticity of a documentary and related materials produced by the BBC in the United Kingdom. *Id.* at 239. The court ultimately denied the deposition request but ordered the subpoenaed party to provide an "affidavit confirming the authenticity of the subpoenaed recordings and their maintenance as business records." *Id.* at 241.

*Klieman* is distinguishable from this case because Ms. Caldwell regularly transacts business in person in the Washington D.C. area, whereas there was no such evidence in *Klieman*. *Id.* at 239. Furthermore, the subject matter of the subpoenaed information in *Klieman* had no relation to the Washington D.C. area, whereas, in this case, Defendants seek subpoena testimony regarding patent prosecution occurring in the Washington D.C. area. *Id.* Finally, the court in *Klieman* ultimately exercised its discretion to order the BBC's United Kingdom office to provide an affidavit containing the testimony the subpoenaing party sought via deposition. *Id.* at 241. Thus, the holding in *Klieman* is consistent with the holdings in *Wultz* and *NML Capitol*; the Court has discretion to craft an appropriate remedy by weighing Bennett Jones' burden compared to Defendants' need for the testimony. As discussed in *Wultz*, in the era of modern technology, it would not impose an undue burden on Bennett Jones to transnationally educate a 30(b)(6) designee—or simply produce Ms. Caldwell—when weighed against Defendants' need for this testimony.[11] *See Alcon Labs.,* 225 F. Supp. 2d at 344 ("[T]he prosecuting attorney's mental impressions are crucial to any claim of inequitable conduct in a patent

---

[11] Furthermore, Defendants are willing to ease Bennett Jones' burden. For instance, Defendants are willing to cover Bennett Jones' expenses of producing Ms. Caldwell, or another knowledgeable deponent, in Washington D.C. In the alternative, Defendants are willing to travel to Calgary for the deposition, so long as Bennett Jones produces a witness prepared to testify on the topics in this subpoena and under the Federal Rules of Civil Procedure.

infringement action"). Rapid Completions is asserting the fruits of Bennett Jones' labor—the Patents-in-Suit—against Defendants with a likely demand of several tens of million dollars and an injunction. Under these circumstances, testimony from Bennett Jones concerning the Patents-in-Suit is needed, and Bennett Jones must designate a knowledgeable witness.

## V.   CONCLUSION

For the reasons stated above, Defendants respectfully requests that Bennett Jones be compelled to comply with Defendants' subpoena promptly.

Dated: May 3, 2016

| **McKool Smith, P.C.** | **Heim Payne & Chorush, LLP** |
|---|---|

**McKool Smith, P.C.**

Tiffany Heavlin
District of Columbia Bar No. 1020997
theavlin@mckoolsmith.com
**MCKOOL SMITH, P.C.**
1999 K Street NW, Ste. 600
Washington, DC 20006
Telephone: (202) 370-8300
Facsimile:  (202) 370-5344

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
P.O. Box O
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile:  (903) 923-9099

Steve J. Pollinger
Texas State Bar No. 24011919
spollinger@mckoolsmith.com
Eric C. Green
Texas State Bar No. 24069824
egreen@mckoolsmith.com
Leah B. Buratti
Texas State Bar No. 24064897
lburatti@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile:  (512) 692-8744

William L. LaFuze
Texas State Bar No. 11792500
wlafuze@mckoolsmith.com
**MCKOOL SMITH, P.C.**

**Heim Payne & Chorush, LLP**

*/s/ Christopher M. First*
Leslie V. Payne
Texas State Bar No. 0784736
Email: lpayne@hpcllp.com
Christopher M. First
Texas State Bar No. 24095112
Email: cfirst@hpcllp.com
**Heim Payne & Chorush, LLP**
600 Travis St., Suite 6710
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Douglas R. Wilson
Texas State Bar No. 24037719
Email: dwilson@hpcllp.com
**Heim Payne & Chorush, LLP**
9442 Capital of Texas Hwy.
Plaza I, Suite 500-146
Austin, Texas 78759
Telephone: (512) 343-3622
Facsimile: (512) 345-2924

**ATTORNEYS FOR DEFENDANTS
WEATHERFORD INTERNATIONAL,
LLC, WEATHERFORD/LAMB, INC.,
WEATHERFORD US, LP, AND
WEATHERFORD ARTIFICIAL LIFT
SYSTEMS, LLC**

| 600 Travis Street, Suite 7000<br>Houston, Texas 77002<br>Telephone: (713) 485-7300<br>Facsimile:  (713) 485-7344<br><br>**ATTORNEYS FOR DEFENDANTS,<br>BAKER HUGHES<br>INCORPORATED, BAKER<br>HUGHES OILFIELD OPERATIONS,<br>INC., PEGASI ENERGY<br>RESOURCES CORP., AND PEGASI<br>OPERATING, INC.** | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on counsel for Bennett Jones via electronic mail and via Federal Express on May 3, 2016.

*/s/ Steven J. Pollinger*
Steve J. Pollinger

## CERTIFICATE OF CONFERENCE

Counsel for Bennett Jones and counsel for Baker Hughes and Weatherford met and conferred on April 29, 2016 and were unable to resolve this dispute.  Bennett Jones opposes this motion.

*/s/ Steven J. Pollinger*
Steve J. Pollinger