# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Baker Hughes Incorporated, Baker Hughes Oilfield Operations, Inc., Pegasi Energy Resources Corp., Pegasi Operating, Inc., Weatherford International, LLC, Weatherford/Lamb, Inc., Weatherford US, LP, and Weatherford Artificial Lift Systems, LLC, | Misc. No. 1:16-mc-00960-ESH-MH |
| Movants, | [PENDING CASE IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, TYLER DIVISION, CASE NO. 6:15-cv-724-RWS-KNM] |
| v. | |
| Bennett Jones LLP 1730 Pennsylvania Ave. NW Suite 875 Washington, D.C. 20006 USA | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NON-PARTY BENNETT JONES LLP'S (i) OPPOSITION TO MOTION TO COMPEL TESTIMONY; AND (ii) CROSS-MOTION TO QUASH DEPOSITION PORTION OF SUBPOENA**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II.  BACKGROUND .................................................................................................. 3

III.  DEPOSITION TOPICS AND ALTERNATIVE INFORMATION SOURCES............... 5

IV.  NO PATENT COUNSEL AT NON-PARTY BENNETT JONES IS LOCATED
OR TRANSACTS BUSINESS WITHIN 100 MILES OF WASHINGTON D.C ............ 6

    A.  Ms. Caldwell Does Not Regularly Transact Business In Person Near D.C ......... 8

    B.  Bennett Jones Has No Suitable 30(b)(6) Witness Within 100 Miles Of D.C........ 9

        1.  The only arguably competent witnesses reside in Canada........................ 9

        2.  Bennett Jones (US) LLP's attorney is not a patent attorney.................... 10

        3.  Movants' cited cases do not apply ......................................................... 12

V.  THE BURDEN OF DEPOSING BENNETT JONES OUTWEIGHS ANY
BENEFIT ............................................................................................................ 18

    A.  The Deposition Topics Relate To A Discredited Inequitable Conduct
Defense ...................................................................................................... 18

        1.  Bennett Jones has no duty to tell the PTO how to apply rejections......... 18

        2.  Movants can obtain the Discovery Through PP, a Party to the
Litigation.............................................................................................. 20

    B.  The Deposition Topics Impinge On The Attorney Client Privilege.................... 20

VI.  THE PROPER PROCEDURAL VEHICLE FOR DEPOSING MS. CALDWELL
IS THROUGH APPLICATION FOR LETTERS ROGATORY ................................... 22

VII.  CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

\* *In re Application for Order Quashing Deposition Subpoena*,
2002 WL 1870084 (S.D.N.Y. Aug. 14, 2002)..........................................................................9

*BASF Aktiengesellschaft v. Reilly Indus., Inc.*,
2004 WL 1721574 (S.D. Ind. July 29, 2004)................................................................21, 22

\* *Bostian v. Suhor Indus., Inc.*
2007 WL 3005177 (N.D. Okla. Oct. 12, 2007) ....................................................................8

*Coleman v. District of Columbia*,
284 F.R.D. 16 (D.D.C. 2012)...............................................................................................20

*Halliburton Energy Servs., Inc. v. M-I, LLC*,
2006 WL 2663948 (S.D. Tex. Sept. 15, 2006) ....................................................................15

\* *Hermitage Global Partners LP v. Prevezon Holdings, Ltd.*,
2015 WL 728463 (S.D.N.Y. Feb. 19, 2015)........................................................................10

\* *Estate of Klieman v. Palestinian Authority*,
293 F.R.D. 235 (D.C. 2013)......................................................................................... *passim*

*Krueger Invs., LLC v. Cardinal Health 110, Inc.*,
2012 WL 3264524 (D. Ariz. Aug. 9, 2012)...........................................................................7

\* *M'Baye v. New Jersey Sports Prod., Inc.*,
246 F.R.D. 205 (S.D.N.Y. 2007) ........................................................................8, 12, 14, 15

*McCook Metals L.L.C. v. Alcoa Inc.*,
192 F.R.D. 242 (N.D. Ill. 2000)....................................................................................21, 22

*NML Capital Ltd. v. Republic of Argentina*,
No. 2:14-cv-492, ECF No. 36 (D. Nev. Aug. 11, 2014)................................................13, 14

*Price Waterhouse LLP v. First Am. Corp.*,
182 F.R.D. 56 (S.D.N.Y. 1998) .............................................................................................9

*Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*,
537 F.3d 1357 (Fed. Cir. 2008)............................................................................................19

\* *Regents of the Univ. of Cal. v. Kohne*,
166 F.R.D. 463 (S.D. Cal. 1996) .....................................................................................8, 15

*In re Regents of Univ. of Cal.*,
   101 F.3d 1386 (Fed. Cir. 1996)........................................................................21

*Rimsat, Ltc. v. Hilliard*,
   207 B.R. 964 (D.D.C. 1997) ...........................................................................16

*In re Rosuvastatin Calcium Patent Litig.*,
   703 F.3d 511 (Fed. Cir. 2012)..........................................................................18

*Sokolow v. Palestine Liberation Org.*,
   2012 WL 3871380 (S.D.N.Y. Sept. 6, 2012)....................................................7

*Sperry v. Florida*,
   373 U.S. 379 (1963).........................................................................................21

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
   276 F.R.D. 376 (D.D.C. 2011).........................................................................20

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) (en banc)....................................................2, 19

*Touchcom, Inc. v. Bereskin & Parr*,
   574 F.3d 1403 (Fed. Cir. 2009)........................................................................13

*W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*,
   2010 WL 181088 (D. Del. Jan. 19, 2010).........................................................7

*Wultz v. Bank of China Ltd.*,
   298 F.R.D. 91 (S.D.N.Y. 2014) .............................................................16, 17, 18

**Rules**

Fed. R. Civ. P.
   26(b)(2)(C)(i) ....................................................................................................7
   26(b)(2)(C)(iii)...................................................................................................7
   26(c)(l)...........................................................................................................1, 7
   30(b)(6) .......................................................................................1, 9, 12, 16
   45................................................................................................................9, 10
   45(c)-(d) .............................................................................................................1
   45(c)(1)(A) ....................................................................................................7, 8
   45(c) ......................................................................................................... *passim*
   45(c)(3) ..............................................................................................................7
   45(c)(3)(A)(ii)..................................................................................................14
   45(d)..................................................................................................................1
   45(d)(1)..............................................................................................................6
   45(d)(3)..............................................................................................................9
   45(d)(3)(A)(ii)...................................................................................................7

**Other Authorities**

Ryan Davis, *Inequitable Conduct A Dying Defense 2 Years Post*-Therasense,
    Law360.com (May 23, 2013)................................................................................................18

Melissa Wasserman, *Limiting the Inequitable Conduct Defense*,
    13 Va. J.L. & Tech. 7 (2008) .............................................................................................18

Pursuant to Federal Rules of Civil Procedure 26(c)(1) and 45(c)-(d), the non-party law firm of Bennett Jones LLP ("Bennett Jones") respectfully opposes Movants' Motion to Compel Testimony in connection with the March 4, 2016 Rule 30(b)(6) subpoena[1] served on it by Movants in the underlying patent infringement lawsuit *Rapid Completions LLC v. Baker Hughes Incorporated*, Case No. 6:15-cv-724-RWS-KNW, currently pending in the Eastern District of Texas.  Bennett Jones also cross-moves to quash the deposition portion of the subpoena.

## I.   <u>INTRODUCTION</u>

This dispute raises a straightforward question of law: can a non-party law firm be compelled to require its Canadian employee to travel to Washington D.C. to attend a deposition as a 30(b)(6) witness, where that employee has not traveled within 100 miles of the district in over three years and where the parties agree that no suitable witness resides within the prescribed geographical limits?  The overwhelming weight of legal authority holds that it cannot.

Movants' reliance on inapposite case law aside, the subpoena impermissibly seeks to coerce patent counsel in Calgary, Canada to travel to Washington D.C. to attend a deposition -- well beyond the 100 mile territorial limit imposed by Fed. R. Civ. P. 45(c)-(d).  Pursuant to Rule 45(d), the issuing court must quash a subpoena that requires a non-party individual to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person.  For Rule 30(b)(6) depositions, Rule 45(d) also requires courts to quash a subpoena where, as here, the organization does not employ a "suitable" 30(b)(6) witness within these limits. Movants' cited cases do not hold to the contrary, and none are applicable to this case.

---

[1] Exhibit 1 to the Declaration of Michael Oleinik ("Olk Decl.")  This motion only involves the deposition portion of the subpoena.  Bennett Jones is producing, subject to its objections, responsive non-privileged documents.

All patent attorneys at Bennett Jones reside and work in Canada, and none regularly transact business in person within 100 miles of this district. Roseann Caldwell, the Bennett Jones patent agent for whom testimony is sought, has not visited Washington D.C. since January 2013. Movants admit that the deposition topics all involve complex patent law issues that cannot effectively be conveyed to a non-patent attorney for providing competent deposition testimony. Movants' Br. ("Br.") at 20. The single Bennett Jones attorney in the United States has no patent background. As such, no suitable witness is within the prescribed geographical limits.

Further, the deposition is unlikely to lead to admissible evidence concerning a defense that has no credibility on its face. The deposition's stated purpose is *only* to seek discovery on Movants' inequitable conduct allegations. To this end, Movants do not and cannot allege the elements of a traditional inequitable conduct defense, namely that patentee intentionally withheld material information from the USPTO. Movants instead assert that Ms. Caldwell "had a duty to inform the examiner of his apparent mistake [in issuing a double patenting rejection], but she never did so." Br. at 8. Yet, no duty exists for patent practitioners to advise Examiners on how to apply the law, and Movants' contention is precisely the type of baseless accusation that resulted in the CAFC's recent foreclosure of such claims as a matter of course. More specifically, the CAFC has dramatically narrowed the scope of the inequitable conduct defense to discourage such specious charges of inequitable conduct by accused infringers, recognizing specifically that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011). Movants' meritless inequitable conduct accusations against Ms. Caldwell cannot justify the oppressive discovery they seek.

The deposition subpoena should also be quashed because it imposes an undue burden on Bennett Jones relative to any conceivable benefit. Courts have traditionally disfavored depositions of patent counsel. Most deposition topics seek information protected by the attorney client privilege. The vast majority of the remaining information sought can be obtained from more accessible sources. The proper legal avenue, if any, for pursuing Bennett Jones' deposition is via the unopposed application for letters rogatory granted by the court on April 4, 2016. The Court should deny the motion to compel and grant the cross-motion to quash.

## II.   **BACKGROUND**

Plaintiff Rapid Completions LLC ("Plaintiff") filed the underlying suit on July 31, 2015. *Plaintiff's Complaint for Patent Infringement*, Olk Decl. Ex. 2. The suit is based on infringement of patents covering various techniques for fracturing oil and gas wells. The patents were originally prosecuted and owned by Packers Plus Energy Services, Inc. ("PP"), a current Bennett Jones client and counterclaim defendant in the underlying case. Declaration of Roseann Caldwell ¶ 5 ("Caldwell Decl."). The patents at issue were prosecuted on behalf of PP by Bennett Jones. Caldwell Decl. ¶ 6. Plaintiff Rapid Completions, LLC eventually obtained the enforcement rights for the patents-in-suit from PP. Caldwell Decl. ¶ 7.

The subpoena was served on Bennett Jones' US office on March 7, 2016. Olk Decl. Ex. 1. The subpoena includes a command to produce documents and a command to appear at deposition, originally noticed for April 5, 2016. Olk Decl. Ex. 1. The instant motion only seeks relief concerning the deposition portion of the subpoena. Bennett Jones will be producing non-privileged, responsive documents in response to the document portion of the subpoena.

On March 25, 2016, counsel for the parties conferred about the subpoena and Bennett Jones' written objections. During the conference, counsel for Bennett Jones indicated that it would agree to continue the deposition (then set for April 5, 2016) until May 12 or May 13th.

Counsel's agreement to continue the deposition was specifically made subject to Bennett Jones' right to quash the subpoena.  Olk Decl. Ex. 3 ("Our agreement to continue the deposition does not waive Bennett Jones' right to file a motion for a protective order to quash or otherwise modify the subpoena.").

Bennett Jones is a Canada-based law firm having five locations in Canada, as well as three "international offices" in Washington D.C., Qatar, and Bermuda.  Caldwell Decl. ¶ 3; Olk Decl. Ex. 4.  The Bennett Jones attorney that was responsible for patent prosecution efforts for PP is Roseann Caldwell, a Canadian citizen and registered Canadian patent agent based out of the Calgary, Alberta office.  Caldwell Decl. ¶¶ 1, 2, 6.  Through a reciprocal agreement between the United States and Canada, Ms. Caldwell is permitted to practice before the United States Patent and Trademark Office (USPTO) to prosecute patent applications.  Caldwell Decl. ¶ 2.  The agreement permits Ms. Caldwell to practice before the USPTO for Canadian residents only.  *Id.*  Ms. Caldwell's practice consists of approximately 70 percent non-US patent matters and 30 percent US patent matters, the latter exclusively for Canadian residents.  *Id.*

Ms. Caldwell's last visit to Washington D.C. was in January 2013, where she attended a conference.  Caldwell Decl. ¶ 8.  Prior to 2013, Ms. Caldwell visited Washington D.C. approximately once a year.  Caldwell Decl. ¶ 9.  During her approximately once-annual visits to Washington D.C., Ms. Caldwell stayed at most for one night or two nights.  Caldwell Decl. ¶ 9.

None of the patent attorneys or agents employed at Bennett Jones travel to the D.C. District with any greater frequency than Ms. Caldwell.  Caldwell Decl. ¶ 11.  None of the remaining four patent attorneys at Bennett Jones that are also licensed to practice before the U.S. Patent Office have visited Washington D.C. since January 2013 for any reason.  *Id.*   All patent

attorneys and agents at Bennett Jones are involved primarily with non-US patent applications. *Id.*

Located in Washington D.C., Bennett Jones (US) LLP is a separate LLP entity from Bennett Jones LLP in Canada.  Caldwell Decl. ¶ 3.  Ms. Caldwell has never visited the office of Bennett Jones (US) LLP.  *Id.*  Bennett Jones (US) LLP employs a single attorney, Melanie Aitken, and a single staff member.  Declaration of Melanie Aitken ¶ 3 ("Aitken Decl."); Olk Decl. Ex. 5.  Ms. Aitken manages the Bennett Jones (US) LLP office.  Aitken Decl. ¶ 2. Bennett Jones (US) LLP has no patent practice and performs no responsibilities relating to patent law (whether in Canada or otherwise).  Aitken Decl. ¶¶ 5, 6.  Ms. Aitken practices antitrust law and commercial litigation, and has an English degree rather than any technical degree.  Aitken Decl. ¶¶ 3, 4.  Ms. Aitken is not a patent attorney, does not analyze or advise clients on any substantive patent law issues (whether in her antitrust practice or otherwise), and is generally unfamiliar with the patent law vernacular such as prior art, enforceability, conception, etc. Aitken Decl. ¶ 5.  Bennett Jones Canada maintains separate staff in Canada for its patent practice and has its own patent docketing system.  Caldwell Decl. ¶ 3.  No patent attorneys or agents at Bennett Jones have travelled to the Bennett Jones (US) office in order to transact business with the USPTO (such as to conduct interviews, or for any other such purpose).  Aitken Decl. ¶ 6.

## III.     DEPOSITION TOPICS AND ALTERNATIVE INFORMATION SOURCES

The topics for which deposition testimony is sought relate to Movants' inequitable conduct defense.  Br. at 7, 9, 13.  In particular, Movants allege that PP's CEO and named inventor on each of the Patents-in-Suit, Dan Themig, knew that the subject matter claimed in the Patents-in-Suit was not novel, and stated in a declaration that certain claimed subject matter was known in the prior art.  *Baker Hughes' Second Amended Answer* ¶¶ 136-47, at 17-21, Olk Decl. Ex. 6.  Movants also allege that Ms. Caldwell committed inequitable conduct before the USPTO.

*Id.* ¶¶ 211-12, Olk Decl. Ex. 6.  Movants specifically allege that, in response to an obviousness-type patent double patent rejection of certain claims, Ms. Caldwell had a duty to inform the Examiner that the rejection was allegedly improper and failed to do so, instead cancelling the affected claims and pursuing them in a continuation application.  *Id.*, Olk Decl. Ex. 6.

On October 26, 2015, Plaintiff Rapid Completions filed in the underlying case motions to dismiss and strike the inequitable conduct defenses and for judgment on the pleadings concerning the same.  Olk Decl. Ex. 7.  During the pendency of the motions, defendant Weatherford, the original proponent of the inequitable conduct allegations, abandoned the inequitable conduct defense.  *Plaintiff Rapid Completions LLC's Reply in Support of its Motion for Judgment on the Pleadings* at 1, Olk Decl. Ex. 8.  Plaintiff filed a second motion for judgment on the pleadings after Defendants amended their answer to include additional inequitable conduct allegations.  Olk Decl. Ex. 9.  The motions were heard on February 9, 2016.  Dkt. No. 121.  The court has not yet issued an order on the motions.

Discoverable information on the topics for which a witness is sought is all more readily obtained from other sources.  Appendix A is a table showing the deposition topics and the other, less burdensome avenues through which responsive information can be obtained.

## IV.  NO PATENT COUNSEL AT NON-PARTY BENNETT JONES IS LOCATED OR TRANSACTS BUSINESS WITHIN 100 MILES OF WASHINGTON D.C.

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  "The court for the district court where compliance is required must enforce this duty…" *Id.*  Pursuant to these well-established principles, which have even greater application for non-parties, courts must limit discovery when the discovery can be obtained from other more convenient, less burdensome, or less expensive sources, or when the discovery's burden or

expense outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).  Courts may also limit discovery "for good cause" and "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding the discovery." Fed. R. Civ. P. 26(c)(l).

The Federal Rules explicitly extend this interest in avoiding undue burden on non-parties to precluding individuals from being coerced via subpoena to testify outside of territorial limits where they reside.  Federal Rule of Civil Procedure 45(c)(1)(A) specifies that a subpoena may command a person to attend a deposition only within 100 miles of where the person resides, is employed, or regularly transacts business *in person*.  Similarly, Federal Rule of Civil Procedure 45(d)(3)(A)(ii) (formerly Rule 45(c)(3)) "provides that the issuing court must quash or modify a subpoena that requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person."  *Estate of Klieman v. Palestinian Authority*, 293 F.R.D. 235, 239 (D.C. 2013) (internal quotation marks omitted); *see also W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, 2010 WL 181088, at *2 (D. Del. Jan. 19, 2010) (Olk Decl. Ex. 10).  "This restriction is imposed to protect non-party witnesses from being subjected to burdensome and excessive discovery in litigation in which the witnesses have little or no interest."  *Sokolow v. Palestine Liberation Org.*, 2012 WL 3871380, at *4 (S.D.N.Y. Sept. 6, 2012) (Olk Decl. Ex. 11) (citing *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002) (denying request to require deposition where only knowledgeable witness resided in United Kingdom)); *see also Krueger Invs., LLC v. Cardinal Health 110, Inc.*, 2012 WL 3264524, at *3 (D. Ariz. Aug. 9, 2012) (Olk Decl. Ex. 12) (holding that, even though non-party DEA could be required to comply with Rule 30(b)(6) subpoena, Rule 45 prohibits

subpoenas requiring non-parties to travel more than 100 miles from their place of business to testify).

A.    **Ms. Caldwell Does Not Regularly Transact Business In Person Near D.C.**

Ms. Caldwell, the patent agent who prosecuted the asserted patents, lives and works in Calgary, Canada, well over 2000 miles from Washington D.C.   Caldwell Decl. ¶ 2.   Ms. Caldwell has not been within 100 miles of Washington D.C., the noticed deposition location, in over three years.   Caldwell Decl. ¶ 8.   Ms. Caldwell's last visit to Washington D.C. was in January 2013 to attend a conference.   Caldwell Decl. ¶ 8.   Prior to 2013, Ms. Caldwell visited Washington D.C. approximately once annually.   Caldwell Decl. ¶ 9.   Ms. Caldwell's maximum stay during these visits was one or two nights.   Caldwell Decl. ¶ 9.   Ms. Caldwell has no current plans to return to Washington D.C. and does not anticipate making future appearances in the District with any regularity.[2]

Under these facts, Ms. Caldwell cannot be said to be within 100 miles of where she resides, is employed, or *regularly* transacts business *in person* as is required under the Federal Rules.   *See* Fed. R. Civ. P. 45(c)(1)(A); *see also M'Baye v. New Jersey Sports Prod., Inc.*, 246 F.R.D. 205 (S.D.N.Y. 2007) ("traveling to an area within a 100-mile radius for fourteen to eighteen days in two years is insufficient to render a person amenable to a subpoena" under Rule 45(c)); *Regents of the Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 464 (S.D. Cal. 1996) (holding that a witness who came to California ten times in seven years, for an undisclosed period, did not regularly transact business there for purposes of Rule 45(c)); *Bostian v. Suhor Indus., Inc.*, 2007 WL 3005177, at *1 (N.D. Okla. Oct. 12, 2007) (Olk Decl. Ex. 13) (stating that "twice yearly

---

[2] Due in part to Patent Examiners residing outside Washington D.C. and in part to the fact that approximately 70% of Ms. Caldwell's workload involves non-U.S. patent prosecution, Ms. Caldwell's need to visit the District has been significantly reduced.   Caldwell Decl. ¶¶ 3, 10.

visits to Oklahoma to conduct business [do] not qualify as regularly transacting business"); *In re Application for Order Quashing Deposition Subpoena*, 2002 WL 1870084, at \*3 (S.D.N.Y. Aug. 14, 2002) (Olk Decl. Ex. 14) (a person who comes to New York for business four times within five years "does not 'regularly transact[] business in person' in New York to the extent contemplated by Rule 45(c)(3)(A)(ii)" (alteration in original)).

### B.   Bennett Jones Has No Suitable 30(b)(6) Witness Within 100 Miles Of D.C.

Furthermore, neither Bennett Jones Canada nor Bennett Jones U.S. has a suitable 30(b)(6) witness located within 100 miles of Washington D.C.   The territorial limitations on deposition subpoenas described above apply with equal force to depositions of non-party organizations under Fed. R. Civ. P. 30(b)(6).   "[U]nder Rule 45 this Court must quash a subpoena where a non-party organization does not employ anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles of the district." *Estate of Klieman*, 293 F.R.D. at 239.   The intent of Rule 45(c) "is to protect non-party witnesses from being inconvenienced by being compelled to travel inordinate distances to have their depositions taken." *Id.* "Allowing a subpoena served pursuant to Rule 30(b)(6) to evade the prescriptions of Rule 45(c) would render Rule 45 surplusage and subject non-parties to the same level of burdensome discovery that can be imposed upon a party." *Id.*

The protections of Rule 45(d)(3) are accorded specifically to the *individual*, not the corporate entity. *Id.* "Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify, not the legal entity for whom those human beings work." *Id.*; *see also Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 62 (S.D.N.Y. 1998) (accord).

### 1.   The only arguably competent witnesses reside in Canada

As described above, none of the patent attorneys or agents employed at Bennett Jones travel to the D.C. District with any frequency.   Caldwell Decl. ¶ 11.   None of the four patent

attorneys at Bennett Jones that are also licensed to practice before the U.S. Patent Office have visited Washington D.C. since January 2013 for any reason.  *Id.*  Prior to 2013, these individuals visited with less frequency, if at all, than Ms. Caldwell.  Accordingly, there are no Canada-based attorneys at Bennett Jones who would be suitable to attend a deposition in Washington D.C.

### 2.  **Bennett Jones (US) LLP's attorney is not a patent attorney**

The presence of Bennett Jones (US) LLP in the United States is not relevant to Movants' efforts to enforce the subpoena.  Rather, the question under Fed. R. Civ. P. 45 is whether there exists an <u>individual</u> who could serve as a suitable deponent.  As one New York district court stated last year:

> [T]he plain language of Rule 45(c) indicates that ***the court cannot compel a witness – as an individual or as a corporate representative*** – to travel more than 100 miles from a place of residence, employment, or regular business to testify at a deposition.  Moreover, the weight of authority supports this conclusion, ***regardless of where the corporate entity itself resides.***

*Hermitage Global Partners LP v. Prevezon Holdings, Ltd.*, 2015 WL 728463, at *4 (S.D.N.Y. Feb. 19, 2015) (Olk Decl. Ex. 15) (emphasis added) .

*Estate of Klieman* is directly applicable to this case.  There, the deposition subpoena recipient BBC had an office and employees in Washington D.C., but the subpoena was nevertheless quashed on the ground that no suitable witness was available.  This court stated:

> The BBC asserts that it does not employ any individual in or near Washington D.C., who could serve as a deponent for this matter, and that every person who could serve as a deponent resides and works in the United Kingdom… As the BBC is headquartered in the United Kingdom and produced the documentary there, and staffs only a news bureau in Washington D.C., the Court finds that [the Magistrate Judge] did not err in doing so.

*Estate of Klieman*, 293 F.R.D. at 239.

Bennett Jones (US)' single attorney, Ms. Aitken, is a commercial litigator with an English degree and no patent background.  Aitken Decl. ¶¶ 3-5.  Given that the deposition topics

are directed to complex patent law issues including claim construction, validity, enforceability, derivation, infringement, inventorship, and conception, and given Ms. Aitken's lack of knowledge concerning unique patent nomenclature as used in the deposition topics themselves (e.g., "foreign counterparts", "related applications", "provisional applications", "prior art", etc.), it would simply be impractical, if not impossible, to reasonably educate her as to these issues to provide an adequate framework for enabling the witness to competently testify at an upcoming deposition. Aitken Decl. ¶ 5. Movants do not dispute this. Br. at 20 (Movants admitting that "it may be impossible to sufficiently educate and prepare a witness other than Ms. Caldwell on the deposition topics.")

Movants argue—wrongly—that "*Klieman* is distinguishable from this case because Ms. Caldwell regularly transacts business in person in the Washington D.C. area, whereas there was no such evidence in *Klieman.*" Br. at 24. Contrary to Movants' assertion to this effect, every case cited by Movants and Bennett Jones demonstrates that Ms. Caldwell's infrequent visits to the district fail to legally qualify as regularly transacting business in person. *See supra.* Further, the court in *Klieman* denied the discovery *despite* that BBC personnel regularly transacted business in person via "BBC's Washington, D.C. Bureau office", where the subpoena was served. *Klieman*, 293 F.R.D. at 238. This demonstrates that the *Klieman* court did not find the presence of a branch office of the subpoenaed entity to be a material fact in determining whether a suitable witness exists within the district. Instead, the focus was whether BBC individuals having personal knowledge of the facts at issue were within 100 miles of the district, and they were not. *Klieman*, 293 F.R.D. at 239.

Movants' further argument that "the subject matter of the subpoenaed information in *Klieman* had no relation to the Washington D.C. area" is equally without merit. Br. at 24. The

test under *Klieman* is not whether there exists some hypothetical nexus between the alleged activity that is the subject of the subpoena and the place of compliance; rather, the test is whether or not a "a nonparty organization … employ[s] anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles of the district."   *Klieman*, 293 F.R.D. at 239 (concluding that Magistrate correctly accepted BBC's representation that it "does not employ any individual in or near Washington D.C., who could serve as a deponent for this matter, and that every person who could serve as a deponent resides and works in the United Kingdom.").   In this case, as noted above, Movants concede that there is likely no such suitable witness.   Br. at 20; *See Klieman*, 293 F.R.D. at 239 ("any contention that a subpoena served pursuant to Rule 30(b)(6) need not comply with the requirements of Rule 45(c) would 'fly in the face' of the intent of Rule 45(c) which is to protect nonparty witnesses from being inconvenienced by being compelled to travel inordinate distances to have their depositions taken.").

### 3.    Movants' cited cases do not apply

Movants argue throughout much of their opening brief that Bennett Jones should be compelled to produce Ms. Caldwell in Washington D.C. because Ms. Caldwell is "licensed" as a U.S. patent practitioner and "has a substantial practice before the USPTO".   *See, e.g.*, Br. at 17, 23.   According to Movants, Bennett Jones and Ms. Caldwell cannot avail themselves of the benefits of U.S. law and a Washington D.C. office while simultaneously challenging the discovery limits of Rule 45(c).   *Id.*   Not one of Movants' cited cases stand for this proposition. Under Rule 45(c) the question of whether a witness has some alleged nexus with the place of compliance other than an in-person presence is ***not*** relevant to determining whether Rule 45(c)'s territorial limitations have been violated.   *See, e.g.*, *M'Baye*, 246 F.R.D. at 207.   Rather, the

operative inquiry under Rule 45(c) is whether the witness resides, is employed, or *regularly* transacts business *in person* within 100 miles thereof.  *See infra.*  Ms. Caldwell does not.

Movants rely, in particular, on the cases of *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009) and *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-492, ECF No. 36 (D. Nev. Aug. 11, 2014) (Olk Decl. Ex. 16) as alleged support for their claim that Bennett Jones cannot "benefit from Ms. Caldwell's license to practice law in the United States by prosecuting the Patents-in-Suit, but … shield itself from comprehensive American discovery concerning inequitable conduct."  Br. at 19.  *Touchcom* is directed to the question of personal jurisdiction and is irrelevant to whether a non-party subpoena violates the territorial limits of Rule 45(c).  *See* Br. at 20 ("*Touchcom* concerned a different standard than Rule 45(c)….").

*NML*, in turn, involved criminal allegations of fraud and money laundering relating to post-judgment execution proceedings in which creditor NML issued subpoenas against 123 Nevada corporations that were allegedly used to launder $65 million of embezzled Argentine funds.  Olk Decl. Ex. 16, at 2.  The corporations argued that the officer and custodian of records for the corporations lived in Panama, outside the court's subpoena power.  *Id.* at 4.  The basis for the court's granting of the motion to compel was that "the 123 companies are shell corporations … routinely formed to commit fraud."  *Id.* at 20.  *NML* does not, as Movants have argued, stand for the proposition that the Rule 45(c) territorial limitations can be vitiated where a subpoena recipient has purposefully availed itself of the law's benefits by incorporating in the place of compliance.  Br. at 22-23.  Rather, the discovery was granted in *NML* because NML made a showing that the subpoenaed corporations were engaging in criminal acts by, among other

things, using the shell corporations to launder embezzled money. *NML* at 21, 22.[3] *NML* is inapposite.

Movants argue that Ms. Caldwell's "substantial practice before the USPTO as evidenced by the USPTO listing her as the prosecuting agent on 239 patent applications since 2001", where "[e]ach application provides an opportunity for in person interaction with the USPTO, such as Examiner's interviews", is relevant.  Br. at 17.  Movants have not, however, cited a case supporting the proposition that such a factor is relevant to an inquiry under Rule 45(c).  The existing precedent is to the contrary.  In *M'Baye*, the court considered whether non-party subpoena recipient "Warren's business communications with persons in New York, as well as his five business trips to New York and Philadelphia within a two-year period qualify as regularly transacting business for purposes of the subpoena."  246 F.R.D. at 207.  In specifically addressing Plaintiff's contention that Warren's business communications with persons in the district were relevant to enforcement of the subpoena, the court stated that "Rule 45(c)(3)(A)(ii) specifies that one must be doing business 'in person' in a given location.  Therefore business transactions that Warren conducted via telephone, email and fax between England, where his office is located, and New York does not demonstrate that New York is a place where he regularly transacts business."  *Id*. (emphasis added).  As in *M'Baye*, Ms. Caldwell's alleged activities and correspondence with the USPTO, including conducting interviews, that are not "in person", are not probative to demonstrate that Ms. Caldwell regularly transacts business in the

---

[3] Movants have not, nor can they, allege that Bennett Jones (US) LLP is a shell corporation or that Bennett Jones meets any of the six factors justifying discovery deemed critical in *NML*. *Id*. at 21-22.  Specifically, Bennett Jones has had no prior involvement in this litigation, has not engaged in any frustration of court purpose and has not engaged in money laundering, fraud or other criminal activities, and there is no stipulation in place regarding costs. *Id*.  Further, unlike *NML*, the discovery sought is by not necessary and can largely be obtained elsewhere. *Id*.

14

D.C. district in person.  The *M'Baye* court proceeded to grant the motion to quash the deposition subpoena, concluding:

> ***Warren has also conducted business in person*** in New York and Philadelphia, which is within 100 miles of New York, ***on five different occasions.*** Rule 45, however, does not state with what regularity a person must transact business in a certain location to amount to a place where one regularly transacts business. But ***traveling to an area within a 100-mile radius for fourteen to eighteen days in two years is insufficient to render a person amenable to a subpoena***.

*Id.* at 208.

Movants likewise cite to *Halliburton Energy Services, Inc. v. M-I, LLC*, 2006 WL 2663948 (S.D. Tex. Sept. 15, 2006) to support their assertion that Bennett Jones can be compelled to produce Ms. Caldwell in Washington D.C. because Ms. Caldwell regularly conducts her patent prosecution business in the Washington D.C. area.  Olk Decl. Ex. 17. *Halliburton*, in fact, supports Bennett Jones, not Movants.  In considering "the burden to the witness of being required to physically appear" in the forum state for deposition in light of Fed. R. Civ. P. 45(c), the Southern District of Texas stated:

> Mueller's regular, frequent, and extended trips to Houston clearly place him in the category of regularly transacting business in person in this city. Mueller travels to the city approximately ***four times each year*** **and stays for approximately** ***ten days each time.  His ten-year average of forty days in Houston each year*** defeats his contention that he does not regularly transact business in person here. ***In Kohne, by contrast, the court held that a witness who only came to California ten times in seven years, for an undisclosed period, did not regularly transact business there.***

*Id.* at 2 (emphasis added) (citing *Kohne*, 166 F.R.D at 463, 464).  Ms. Caldwell, who has not visited within 100 miles of the district in over three years and whose prior visits averaged once a year, is much more akin to the non-party in *Kohne*, whom the court found did <u>not</u> regularly

transact business in person.  *Kohne*, 166 F.R.D. at 465 ("The Magistrate also correctly applied the rule: *'regularly' does not mean ten times in seven years*.") (emphasis added).[4]

Movants finally rely on *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91 (S.D.N.Y. 2014) as alleged support for the proposition that Bennett Jones is obligated to proffer a 30(b)(6) witness. Br. 23.  In *Wultz*, the Southern District of New York denied a non-party Israeli bank's motion to quash a Rule 30(b)(6) deposition subpoena.  The non-party bank maintained a branch office in New York City.  *Id.* at 98.  The subpoena recipient argued that the court should quash the subpoena in light of Rule 45(c)'s geographical limitation because the wire transactions at issue originated in Israel and because it was impractical to educate a New York bank employee concerning the transactions.  *Id.* at 95.

In denying the motion to quash, the court reasoned that (i) the defendants subpoena had significantly narrowed the deposition topics and described them with particularity, and (ii) the defendants had sufficiently established the relevance of the sought testimony as a viable defense. *Id.* at 98.  Most importantly, the *Wultz* court found, unlike the instant case, that there were one or more **suitable witnesses that resided and worked in the district at issue** that the company could

---

[4] Movants also cite to *Rimsat, Ltc. v. Hilliard*, 207 B.R. 964, 969-70 (D.D.C. 1997) for the limited proposition that "a witness who maintains a business office in Washington D.C. regularly transacts business in person in Washington D.C."  Br. at 16.  That case, too is distinguishable in that the operative showing in that case was a set of documents showing that the *witness himself* maintained a business office in Washington D.C.  *Rimsat*, 207 B.R. at 967.  While Bennett Jones has a Washington D.C. office, Ms. Caldwell, a non-partner employee of Bennett Jones in Calgary, Alberta, does not.  Further, in *Rimsat*, the court ruled against Hilliard because he was perceived as engaging in "stalling tactics or frivolous arguments" by failing to timely proffer evidence refuting the documents tending to show that he regularly conducted business in the district.  *Id.*  "[Hilliard] had the burden of coming forth with evidence that the subpoena should be quashed or modified.  He offered no evidence in support of his claim."  *Id.*  "Instead of offering evidence in support of his contention …. Hilliard offered bald assertions."  In contrast to Rimsat, Bennett Jones has proffered evidence that Ms. Caldwell does not and never did regularly transact business in the district, and has consequently met its burden of proof.

designate.  *Id.* at 98-99.  In particular, relative to the non-party bank's argument that its New York employees could not be adequately prepared to provide deposition testimony, the court disagreed, stating:

> A person in New York can ***easily be educated*** by a person in Israel by telephone, email or videoconference and relevant documents can easily be transmitted on a single flash drive or CD-ROM.  Further, in the age of videoconferencing, Hapoalim can avoid the burden of educating a New York employee altogether by agreeing to a deposition by video, to which BOC has consented.

*Id.* (emphasis added).  For these reasons, the court concluded that the bank's duty to prepare a designee for deposition testimony did not constitute an undue burden.  *Id.* at 99.

Movants' reliance on *Wultz* is misplaced.  Unlike *Wultz* where the court specifically determined that a "person in New York can *easily be educated* by a person in Israel" as to the subject matter of the deposition involving facts surrounding a wire transfer, Movants in this case correctly "recognize that it may be impossible to sufficiently educate and prepare a witness other than Ms. Caldwell on the deposition topics."  Br. at 20.  The topics in this case, unlike in *Wultz*, involve intricate issues of patent law in which a non-patent individual cannot realistically be expected to proffer competent testimony.  The *Wultz* court recognized that "[o]f course the court cannot compel [non-party subpoena recipient] to designate a *specific* person."  *Id.* at 99 (emphasis in original).  Because Bennett Jones' single attorney is admittedly not qualified to serve as a witness and no other Bennett Jones' U.S. patent practitioner has an in-person nexus with the district, the holding in *Wultz* does not apply to this case.

Furthermore, unlike in *Wultz* where the subpoena issuer had "significantly narrowed the deposition topics and described them with sufficient particularity" (*id.* at 98), the topics in this case are grossly overbroad and unduly burdensome and, despite having a stated basis in an inequitable conduct defense, in fact seek information concerning a broad panoply of patent law

issues from claim construction to inventorship.  It should also be noted that in *Wultz*, the defense necessitating the deposition—a wire transfer to fund a terrorist act—was a critical element to the defendant's case (*see id.* at 98-99).  As discussed below, the inequitable conduct defense is at best an unlikely defense and ancillary to the patent case.

## V.        THE BURDEN OF DEPOSING BENNETT JONES OUTWEIGHS ANY BENEFIT

### A.        The Deposition Topics Relate To A Discredited Inequitable Conduct Defense

Movants' stated reason for the deposition subpoena is to seek discovery on its inequitable conduct claims.  Br. at 9.  Far from being deemed a central or integral defense to patent infringement, courts in the vast majority of cases view inequitable conduct allegations with suspicion and disfavor.  "Proving an inequitable conduct defense in a patent case has become so difficult because of the Federal Circuit's Therasense ruling that attorneys rarely bother to mount it anymore . . . ." Ryan Davis, *Inequitable Conduct A Dying Defense 2 Years Post-*Therasense, Law360.com (May 23, 2013) (Olk Decl. Ex. 18).  "[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague."  *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 525 (Fed. Cir. 2012) (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc)).  "The 'plague' of inequitable conduct has negative consequences on patentees and the court system. Patentees who are wrongly accused of inequitable conduct face expensive litigation, damage to their reputation, and diversion from further innovation.  The court system suffers from using resources to address these frivolous claims."  Melissa Wasserman, *Limiting the Inequitable Conduct Defense*, 13 Va. J.L. & Tech. 7 (2008) (Olk Decl. Ex. 19).

#### 1.        Bennett Jones has no duty to tell the PTO how to apply rejections

Movants make various inequitable conduct allegations, none of which involve alleged material misrepresentations of fact.  Olk Decl. Ex. 8 at 1.  Essentially, Movants allege that Ms.

Caldwell failed to advise the patent examiner that a double-patenting rejection was allegedly improper, instead cancelling the rejected claims and later filing a continuation application with the same claims.  Br. at 7.  In their only support that the examiner's rejection was unintended, Movants purport to describe the likely state of mind of the patent examiner, stating that the examiner "apparently confused Packers Plus for Baker Hughes" in issuing the subject rejection. Br. at 8.

"To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (citing *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)). Information is "material" only if it is "but-for" material:

> When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference.

*Id.* at 1291 (emphasis added).  The allegations against Ms. Caldwell do not involve the failure to disclose prior art, material or otherwise.   Instead, they are predicated on a claim that Ms. Caldwell failed to apprise the Examiner of a legal error.

Movants have not cited any case law supporting the proposition that it is incumbent on a patent applicant to apprise a patent examiner as to whether a particular rejection was legally improper.  To the contrary, with reference to an applicant's duty of candor to the USPTO and information that may be required in prosecuting a patent application, MPEP 704.11 clarifies that the information is limited to facts known to the applicant and does not encompass opinions on the correct application of the law:

> Information which may be required under 37 CFR 1.105 is that information ***reasonably necessary*** to properly examine or treat a matter in a pending or abandoned application filed under 35 U.S.C. 111 (including a reissue application), in a pending or abandoned application that has entered the national stage under 35 U.S.C. 371, in a patent, or in a reexamination proceeding.
>
> The terms "factual" and "facts" are included in 37 CFR 1.105 to make it clear that ***it is facts and factual information***, that are known to applicant, or readily obtained after reasonable inquiry by applicant, that are sought, and that requirements under 37 CFR 1.105 are ***not requesting opinions that may be held or would be required to be formulated by applicant***. . . . The purpose of 37 CFR 1.105 is to improve patent quality, and render better decisions, and not to put applicants in jeopardy of meeting their duties of candor and good faith in their replies to a requirement for information.

Olk Decl. Ex. 20 (emphasis added).  Because no such duty exists, Bennett Jones did not violate

its duty of candor, and the discovery sought would not likely lead to admissible evidence.

### 2.    Movants can obtain the Discovery Through PP, a Party to the Litigation

The bulk of Movants' remaining inequitable conduct allegations involve an allegedly

improper declaration submitted by the co-founder and Chief Executive of PP.  However, PP is

currently a party to the lawsuit.  As a result, Movants' can obtain the necessary discovery

directly from PP without resorting to this subpoena.

Here, in light of the marginal nature of the defense for which discovery is sought and

Bennett Jones' status as a non-party law firm, Movants likely cannot justify their need for the

requested information in view of the significant burden imposed by a deposition of Bennett

Jones.  As noted below, communications with the client are protected by the attorney-client

privilege.  Deposing Bennett Jones will result in little, if any, non-privileged and relevant

information about the asserted patents and the inequitable conduct defense.

### B.    The Deposition Topics Impinge On The Attorney Client Privilege

Deposing an opposing party's attorney is disfavored. *Coleman v. District of Columbia*,

284 F.R.D. 16, 18 (D.D.C. 2012); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,

276 F.R.D. 376, 380-82 (D.D.C. 2011).   In this case, Bennett Jones currently represents PP in a variety of matters, and PP is a named party in the lawsuit.

Deposing Bennett Jones will necessarily touch on information protected by the attorney-client privilege, likely creating ancillary litigation.   Preparing and prosecuting patent applications constitutes the practice of law.   *Sperry v. Florida*, 373 U.S. 379, 383 (1963).   The attorney-client privilege applies to an attorney's communications relating to drafting and prosecuting patent applications: "Consultation with counsel during patent prosecution meets the criteria of compliance with law and meeting legal requirements, thereby reducing or avoiding litigation, and is within the scope of subject matter that is subject to the attorney-client privilege."   *See In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1391 (Fed. Cir. 1996).   The attorney-client privilege has been applied to attorney-client communications at different patent prosecution stages.   For example, regarding attorney-client communications at the initial prosecution stages, one Illinois federal district court held that the attorney-client privilege protected early drafts of the specification, claims, and other application parts.   *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 252-53 (N.D. Ill. 2000).   This Illinois court emphasized that patent prosecution counsel provides legal advice by describing the invention in the best light possible to protect the client's legal right and that a patent draft implicitly contains an attorney's legal opinion and advice about the wording of technical specifications, claims, and prior art.   *Id.* at 252. Another federal district court held that the attorney-client privilege protected a patent prosecution counsel's letter to a client about an examiner interview and a draft response to an Office Action. *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 2004 WL 1721574, at *2 (S.D. Ind. July 29, 2004) (Olk Decl. Ex. 21).

Here, Bennett Jones prosecuted the asserted patents. During the prosecution of these patents, Bennett Jones often communicated with PP about prosecution strategy. Thus, any communication between Bennett Jones and PP about the asserted patents or about draft Patent Office communications, for example, communications about draft claim amendments, specification amendments, and remarks are protected by the attorney-client privilege. *See, e.g., McCook Metals*, 192 F.R.D. at 252-53 (protecting initial patent application drafts); *BASF*, 2004 WL 1721574, at *2 (protecting a letter about an examiner interview and a draft reply to an Office Action). Therefore, aside from the items in the file wrapper of the asserted patents, nearly everything known by Bennett Jones is protected by the attorney-client privilege.

Bennett Jones has an ongoing attorney-client relationship with PP, and counsels PP, in a variety of matters. Caldwell Decl. ¶ 4. In sum, deposing Bennett Jones, PP's prosecution counsel, creates a heavy burden.

## VI.   THE PROPER PROCEDURAL VEHICLE FOR DEPOSING MS. CALDWELL IS THROUGH APPLICATION FOR LETTERS ROGATORY

Bennett Jones asserts that its deposition will have little if any value as outlined above. Nevertheless, to the extent Movants believe they are entitled to Ms. Caldwell's testimony, the proper procedural vehicle for deposing Ms. Caldwell is through application for letters rogatory. On March 31, 2016, Movants filed a motion for letters Rogatory for Roseann Caldwell, which motion was unopposed by Plaintiff. Olk Decl. Ex. 22. On April 4, 2016, the Court granted the motion. Movants should not be permitted to effectively short-circuit the letters rogatory requirements by issuing a subpoena that requires Ms. Caldwell or another Canadian Bennett Jones attorney to travel across North America to provide testimony.

## VII.    <u>CONCLUSION</u>

For the foregoing reasons, Bennett Jones respectfully requests that this Court (i) deny the

motion to compel, and (ii) relative to Bennett Jones' cross-motion, issue the attached Proposed

Order to quash the deposition subpoena.


Date: May 11, 2016                                 Respectfully submitted,



                                                   /s/Taniel Anderson
Michael G. Oleinik (*pro hac vice* forthcoming)
Craig Gelfound (*pro hac vice* forthcoming)        Anthony W. Shaw (D.C. Bar No. 362746)
**ARENT FOX LLP**                                  Taniel Anderson (D.C. Bar No. 997406)
Gas Company Tower                                  **ARENT FOX LLP**
555 West Fifth Street, 48th Floor                  1717 K Street, NW
Los Angeles, CA 90013                              Washington, D.C. 20006
P: 213.443.7400                                    P: 202.857.6000
F: 213.629.7401                                    F: 202.857.6395

*Counsel for Third Party Bennett Jones LLP*

## CERTIFICATE OF SERVICE

In accordance with LCvR 5.3, I hereby certify that on April 1, 2016 I caused to be served

a copy of the foregoing upon all counsel of record in this case by CM/ECF.

Dated: May 11, 2016                                 Respectfully submitted,

                                                    /s/Taniel Anderson
                                                    Taniel Anderson
                                                    **ARENT FOX LLP**